UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| BARRY K. HARRIS,<br><br>Plaintiff,<br><br>v.<br><br>BRUCE WESTBROOKS, ET AL.,<br><br>Defendants. | No. 1 07 0018<br>Judge Trauger |

## MEMORANDUM

The plaintiff, proceeding *pro se* and *in forma pauperis*, is a prisoner in the South Central Correctional Facility ("South Central") in Clifton, Tennessee. He brings this action under 42 U.S.C. § 1983 and the Americans With Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101, *et seq.* The complaint names the following defendants: 1) Bruce Westbrooks, Deputy Warden at the Wayne County Boot Camp ("Wayne County"); 2) Deana Daniels; 3) Jeana Grace; and 4) A. Potts. Defendants Daniels, Grace, and Potts were employed at Wayne County at the time of the alleged events that gave rise to this action. The plaintiff seeks money damages and injunctive relief, alleging that the defendants violated his rights under the Eighth and Thirteenth Amendments.

The plaintiff asserts that his he was transferred from South Central to the Parole Technical Violator Diversion Program at Wayne County on October 12, 2006, and that his medical needs were evaluated by the medical staff at South Central prior to his transfer. (Complaint, ¶ IV, p. 1) According to the plaintiff, he also was examined by the medical staff at Wayne County on October 12, 2006 at which time he was placed on thirty days medical restriction. (Complaint, ¶ IV, p. 2)

On October 17, 2006, during his Individual Program Plan (IPP) hearing, the plaintiff claims that he advised the committee, including defendant Grace who was in attendance, that the information they had on his medical status was incorrect. (Complaint, ¶ IV, p. 2) According to documents attached to the complaint, the medical status before the committee was as follows:

"Medical Evaluation: Class B Medical, Medication/Restrictions: Three medications for Hypertension/Lifting 100 lbs maximum-medium work only . . . ." (Complaint, ¶ IV, p. 2; Attach. IPP Worksheet, dtd. Oct. 12, 2006, p. 1)

The plaintiff alleges that defendant Daniels assigned him to the community service work detail the following day, October 18, 2007. (Complaint, ¶ IV, p. 2) The plaintiff avers that he asked defendant Daniels if she was aware of his medical status, to which she allegedly replied that she was, and that she had been "in touch with medical and [that] they would call her if anything . . . change[d]." (Complaint, ¶ IV, p. 2)

The plaintiff claims that he "ran into" Deputy Warden Westbrooks after he left defendant Daniels' office and "told him what [his] restrictions were," but that Deputy Warden Westbrooks told him to "work this detail or be terminated from the program." (Complaint, ¶ IV, p. 2) According to the plaintiff, Deputy Warden Westbrooks told him that this was the "only work detail that d[i]version inmates were assigned to," which the plaintiff contends is not true.[1] (Complaint, ¶ IV, pp. 2-3) The plaintiff also claims that Deputy Warden Westbrooks accused him of having "had [his] restrict[ion]s changed so that [he] would not have to work on this community service detail." (Complaint, ¶ IV, p. 3) Finally, the plaintiff alleges that Deputy Warden Westbrooks went "to the . . . doctor . . . and told him to lift pre-existing restrictions . . . to make [the plaintiff] able to work Community Service work." (Complaint, ¶ IV, p. 3)

According to the plaintiff, he was "officially placed on the detail" on October 19, 2006, and injured his back on November 2, 2006 while lifting a flower pot. (Complaint, ¶ IV, p. 3) The plaintiff claims that he applied for other jobs after he injured his back but, when he was never

---

[1] The plaintiff claims that he later spoke with defendant Grace to determine whether diversion inmates were required to work on the community services work detail, and that she responded "she had never hear[d] of that." (Complaint, ¶ IV, p. 3)

2

assigned to one, he filed two grievances against Deputy Warden Westbrooks. (Complaint, ¶ IV, p. 4) The plaintiff avers that he sought assistance from defendant Grace after filing the first grievance, who allegedly told him "in so many words that it was a decision that [he] would have to make,"[2] and that "she didn't want any part of expressing this to Bruce Westbrook[s]." (Complaint, ¶ IV, p. 4)

Finally, the plaintiff alleges that defendant Potts, the grievance hearing officer, retaliated against him for submitting the two grievances by filing a disciplinary report against the plaintiff for "creating a disturbance."[3] (Complaint, ¶ IV, p. 4) According to the plaintiff, he was terminated from the diversion program and returned to South Central even though, under the program rules, he could have received "three disciplinary's [sic] and not be[en] terminated from th[e] program." (Complaint, ¶ IV, p. 4)

## ANALYSIS

Under the Prison Litigation Reform Act (PLRA), the court is required to dismiss a prisoner-plaintiff's complaint if it is determined to be frivolous, malicious, or if it fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b). A complaint is frivolous and warrants dismissal when the claims "lack[] an arguable basis in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Claims lack an arguable basis in law or fact if they contain factual allegations that are fantastic or delusional, or if they are based on legal theories that are indisputably meritless. *Id.* at 327-28; *Brown v. Bargery*, 207 F.3d 863, 866 (6th Cir. 2000); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198-99 (6th Cir. 1990). Although *pro se* complaints are to be construed liberally by the courts, *see Boag v. MacDougall*, 454 U.S. 364, 365 (1982), under the PLRA, "courts have no

---

[2] It is unclear from the complaint to what "decision" the plaintiff is referring.

[3] The plaintiff claims that he pled guilty to the "retaliatory disciplinary for . . . health and safety reasons," and to "rid himself of the physical[], mental, and racial bias he had to endure for filing the grievances . . . ." (Complaint, ¶ IV, p. 5)

3

discretion in permitting a plaintiff to amend a complaint to avoid a *sua sponte* dismissal," *McGore v. Wrigglesworth*, 114 F.3d 601, 612 (6th Cir. 1997).

## Plaintiff's Claim Under the ADA

The ADA prohibits covered entities from discriminating against qualified individuals with a disability. 42 U.S.C. § 12112(a). To state a claim under the ADA, the plaintiff must demonstrate that: 1) he is a disabled person within the meaning of the ADA; 2) that he is qualified to perform the essential functions of his job with or without reasonable accommodation; and 3) that he suffered an adverse employment decision because of his disability. *McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, 371 (6th Cir. 1997).

The ADA defines disability" as "a physical impairment that substantially limits one or more of the major life activities . . . ." 42 U.S.C. § 12102(2). The phrase "'[m]ajor life activities' . . . refers to those activities that are of central importance to daily life," such as "walking, seeing, and hearing." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197 (2002). Working also is a major life activity. *See Mahon v. Crowell*, 295 F.3d 585, 590 (6th Cir. 2002). However, "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Moorer v. Baptist Memorial Health Care System*, 398 F.3d 469, 479 (6th Cir. 2005)(citing 29 C.F.R. § 1630.2(j)(3)(1)).

The plaintiff's lower back problem, and the limitations that it imposes in performing certain tasks, does not constitute a substantial limitation involving the major life activity of working. Because the plaintiff is not disabled within the meaning of the ADA, this claim will be dismissed for failure to state a claim on which relief may be granted.

## Plaintiff's Claim Under the Thirteenth Amendment

The plaintiff alleges that the defendants violated his rights under the Thirteenth Amendment. The Thirteenth Amendment abolished "slavery and involuntary servitude, except as a punishment

4

for crime whereof the party shall have been duly convicted...." *U.S. Const.* amend XIII § 1. The plaintiff is not a slave. Moreover, the work detail to which he was assigned does not constitute "involuntary servitude" prohibited by the Thirteenth Amendment. Because this claim lacks an arguable basis in law or fact, it will be dismissed as frivolous.

Plaintiff's claim under 42 U.S.C. § 1983.

To state a claim under § 1983, the plaintiff must allege and show: 1) that he was deprived of a right secured by the Constitution or laws of the United States; and 2) that the deprivation was caused by a person acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)(overruled in part by *Daniels v. Williams*, 474 U.S. 327, 330 (1986)); *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-56 (1978); *Black v. Barberton Citizens Hosp.*, 134 F.3d 1265, 1267 (6th Cir. 1998). Both elements of this two-part test must be met to support a claim under § 1983. *See Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

To state a claim under the Eighth Amendment, the offending conduct must involve an unnecessary and wanton infliction of pain. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976). A viable Eighth Amendment claim has both an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component means that the injury must be serious, *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992), and the subjective component requires proof that the defendants acted with deliberate indifference to the inmate's health or safety, *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991).

<u>Defendants Daniels, Grace, and Potts</u>

The complaint shows that defendant Daniels assigned the plaintiff to the community services work detail based on his medical status as it was known to her. It also can be inferred from the complaint that she told the plaintiff his work assignment would be reviewed in light of any changes to his status. The plaintiff does not allege that defendant Daniels had received updated information

5

regarding his medical status, or that she knowingly assigned him to the community services work detail contrary to medical restrictions that would have made it potentially injurious for him to work on that detail. Neither can such inferences be liberally construed from the complaint or attached documents. Based on the facts alleged, the plaintiff has failed to establish that defendant Daniels was deliberately indifferent to his health or safety.

As to defendant Grace, the plaintiff alleges that she was at the IPP hearing where he advised those present that his medical information was incorrect, and that she later told him that she was unaware that inmates on the diversion program were required to work on the community services work detail. The plaintiff does not allege, nor can it be liberally construed from the complaint, that defendant Grace acquiesced to his assignment knowing that his medical information was incorrect, or that he ever sought defendant Grace's assistance to get off the community services work detail for medical reasons. The plaintiff also asserts that he spoke with defendant Grace after he injured his back, but this conversation after the fact had nothing to do with the circumstances that led to the plaintiff's injury. Under the facts alleged, the plaintiff has failed to establish that defendant Grace was deliberately indifferent to his health or safety.

Finally, the plaintiff alleges that defendant Potts retaliated against him for submitting the two grievances against Deputy Warden Westbrooks, implying as well that defendant Potts played an unspecified role in his dismissal from the diversion program. The plaintiff's claims against defendant Potts has nothing to do with the plaintiff's Eighth Amendment deliberate indifference claim.[4]

For the reasons stated above, the plaintiff has failed to establish that defendants Daniels, Grace, and Potts were deliberately indifferent to his health or safety. Because the plaintiff's claims

---

[4] The plaintiff is explicit that his claim against the defendants is an Eighth Amendment deliberate indifference claim. (Complaint, ¶ IV, pp. 2-5)

Case 1:07-cv-00018   Document 3   Filed 04/04/07   Page 6 of 9 PageID #: 48

against these defendants lack an arguable basis in law or fact, they will be dismissed as frivolous.

### Deputy Warden Westbrooks

The plaintiff's claims against Deputy Warden Westbrooks are as set forth, *supra* at pp. 2-3. The thrust of the plaintiff's Eighth Amendment deliberate indifference claim against Deputy Warden Westbrooks is that he had the plaintiff's medical restrictions lifted so that the plaintiff was forced to work on the community services work detail, the consequence of which was that the plaintiff allegedly injured himself.

The plaintiff has attached a copy of a grievance that he filed against Deputy Warden Westbrooks which he asks the court to accept as evidence in support of his claims. (Complaint, ¶ IV, p. 5; Attach. Griev., dtd. Nov. 15, 2006) Attached is the response to the grievance in which Deputy Warden Westbrooks writes:

> After assignment to work on a community service work line [the defendant] went through medical to attempt to get a medical classification change to be removed from the assignment. A medical doctor examined him, got a specialty consult and determined his appropriate medical classification which confirmed he was medically able to do the assignment he was given . . . .

(Complaint, Attach. Griev, Response, dtd. Nov. 27, 2006)

Deputy Warden Westbrooks' statement that the plaintiff sought to "get a medical classification change to be removed from the [community service] assignment" is supported by the record. A copy of an e-Tomis "Health Assessment" attached to the complaint shows that the medical restrictions at issue were entered at 11:43 a.m. on October 18, 2006, not when the plaintiff arrived at Wayne County on October 12 as he claims in the statement of facts. The e-Tomis "Health Assessment" also establishes that the plaintiff sought and obtained a change in his medical status after his IPP hearing the day before. Although it cannot be determined from the record whether the

7

plaintiff's medical status was changed before he met with defendant Daniels, the plaintiff's statement that Deputy Warden Westbrooks accused him after he left defendant Daniels' office of "ha[ving] [his] restrict[ion]s changed so that [he] would not have to work on this community service detail" (Complaint, ¶ IV, p. 3) supports the conclusion that the plaintiff had his medical status changed after being assigned to the community services work detail, but prior to encountering Deputy Warden Westbrooks. Finally, the statement quoted *supra* at p. 7 confirms the plaintiff's allegation that Deputy Warden Westbrooks had the doctor at Wayne County lift the medical restrictions at issue.

The law is well established that the subjective component of a viable Eighth Amendment claim requires that the non-penal conduct be "wanton." *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). "Wanton" is defined as "Unreasonably or maliciously risking harm while being utterly indifferent to the consequences." *Black's Law Dictionary* 1613 (8th ed. 1999S).

Based on the facts alleged, Deputy Warden Westbrooks' actions in removing the plaintiff's medical restrictions cannot be said to have been "wanton." On the contrary, the record supports that conclusion that Deputy Warden Westbrooks' actions were motivated by his responsibility to prevent what appeared to be the plaintiff's effort to avoid working on the community services work detail rather than his reckless or malicious disregard for the plaintiff's health or safety. Even if Deputy Warden Westbrooks were mistaken about the plaintiff's intent, mistakes do not constitute grounds for relief under § 1983. A successful § 1983 claimant must establish that the defendant acted knowingly or intentionally. *Daniels*, 474 U.S. at 333-36; *Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. 1999); *Howard v. Grinage*, 6 F.3d 410, 415 (6th Cir. 1993).

Finally, the plaintiff alleges that his medical restrictions were reentered on October 21, 2006. (Complaint, ¶ IV, p. 2; Attach. Health Assessment, dtd. Oct. 21, 2006) However, the plaintiff does not allege, nor can it be liberally construed from the complaint or attached documents, that Deputy

Warden Westbrooks was aware of that change. The less stringent standard for *pro se* plaintiffs does not compel the courts to conjure up unpled facts. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1990)(citing *Merritt v. Faulkner*, 697 F.2d 761 (7th Cir. 1983)). Even assuming that Deputy Warden Westbrooks had been aware of the change, there is nothing in the complaint or attached documents that supports the conclusion that he was aware that the plaintiff still was assigned to the community services work detail and that he failed to take the necessary action to relieve the plaintiff of those duties. Neither can it be inferred that Deputy Warden Westbrooks was on notice of the plaintiff's circumstances after October 21 based on the grievances that the plaintiff filed. The plaintiff filed his grievances well after his injury.

Because the record before the court does not establish that Deputy Warden Westbrooks' actions were taken with wanton disregard for the plaintiff's health and safety, the plaintiff has failed to satisfy the subjective part of the two-part test for deliberate indifference. Therefore, the plaintiff's claim against Deputy Warden Westbrooks will be dismissed for failure to state a claim on which relief may be granted.

An appropriate Order will be entered.

Aleta A. Trauger
United States District Judge

9